## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

HAWAII DISCOUNT, LLC, d/b/a )
Hawaiidiscount.com, LLC, )
 )
Plaintiff, )
 )        No. 2:21-cv-02011-DCN
vs. )
 )        **ORDER**
TEUILA HAWAII, LLC and ROBERT'S )
HAWAII, INC., )
 )
Defendants. )
_____ )

The following matter is before the court on plaintiff Hawaii Discount, LLC's ("Hawaii Discount") motion to compel, ECF No. 42, and defendants Teuila Hawaii, LLC ("Teuila Hawaii") and Robert's Hawaii, Inc.'s ("Robert's Hawaii") motion for partial summary judgment, ECF No. 46.  For the reasons set forth below, the court denies the motion to compel and grants in part and denies in part the motion for partial summary judgment.

## I.  BACKGROUND

This matter arises out of a failed business relationship.  Edward Sax ("Sax") originally sought to create a traditional Hawaiian luau show—known as Chief's Luau—based in Oahu, Hawaii.  Sax and his business partner, Folosielu Avea, formed Hawaii Sunset Events, LLC ("HSE"), with Sax serving as the president.  To bring the show to fruition, HSE sought the help of Hawaii Discount, a company that sells discount tickets through online portals to tourist attractions, tours, and events across Hawaii.  HSE and Hawaii Discount entered into an agreement on February 12, 2012 (the "2012 Agreement").  ECF No. 46-2.  Under the terms of the 2012 Agreement, Hawaii Discount

1

would "rebuild, optimize, and own" Chief's Luau's website while promoting the Chief's Luau on its other platforms.  Hawaii Discount also agreed to operate a call center for Chief's Luau's ticket sales.  In 2013, HSE and Hawaii Discount modified the 2012 Agreement to change the commission structure, among other changes (the "2013 Agreement").  ECF No. 46-3.  The parties also modified the 2013 Agreement to state that Hawaii Discount would "rebuild and optimize" the website, and the URL would be "controlled" by Hawaii Discount.  Id. at 2.

According to Hawaii Discount, as Chief's Luau's success grew, so did Sax's ambition to own a greater degree of control over the brand.  Hawaii Discount alleges that as part of that plan, Sax created a holding company, defendant Teuila Hawaii, LLC ("Teuila Hawaii"), which became the holder of HSE's interest in the Agreement.  In 2020, HSE and Teuila Hawaii were dissolved and sold to a group of buyers that included defendant Robert's Hawaii, Inc. ("Robert's Hawaii").  Hawaii Discount alleges that together, Teuila Hawaii and Robert's Hawaii breached the Agreement due to a belief that Robert's Hawaii could perform the work that Hawaii Discount was doing.

On June 16, 2021, Hawaii Discount filed a complaint against HSE[1] and Teuila Hawaii in the Charleston County Court of Common Pleas, seeking a declaratory judgment that the parties were engaged in a common law partnership and that Hawaii Discount was the owner of the Chief's Luau website and domain name.  ECF No. 1-1, Compl.  On July 6, 2021, Teuila Hawaii removed the action to this court.  ECF No. 1. On July 28, 2021, Hawaii Discount filed its first amended complaint, ECF No. 6,

---

[1] On March 3, 2022, the court entered an order dismissing HSE as a defendant due to the lapse of Hawaii's nonclaim statute governing suits against dissolved limited liability companies.  ECF No. 45.

whereby it added Robert's Hawaii (together with Teuila Hawaii, "defendants") as a defendant and asserted eight additional causes of action.[2]  On August 11, 2021, defendants filed an answer, whereby Teuila Hawaii further asserted nine counterclaims against Hawaii Discount.  ECF No. 8, Ans. & Countercl.

On February 11, 2022, Hawaii Discount filed a motion to compel.  ECF No. 42. On February 25, 2022, defendants responded in opposition.  ECF No. 44.  Hawaii Discount did not file a reply, and the time to do so has now expired.  On April 1, 2022, defendants filed a motion for partial summary judgment.  ECF No. 46.  Hawaii Discount responded in opposition on April 28, 2022, ECF No. 49, and defendants replied on May 13, 2022, ECF No. 57.  The court held a hearing on the motions on June 28, 2022.  ECF No. 58.  As such, both motions have been fully briefed and are now ripe for review.

## II.  STANDARD

### A.  Motion to Compel

Federal Rule of Civil Procedure 26 provides that, unless otherwise limited by court order,

> [p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden of expense of the proposed discovery outweighs its likely benefit.

---

[2] These are, in order: (2) breach of fiduciary duty, (3) breach of contract, (4) breach of contract accompanied by fraudulent act by HSE and Teuila Hawaii, (5) unfair competition in violation of 15 U.S.C. § 1225(a) by Teuila Hawaii, (6) fraudulent assignment by Teuila Hawaii, (7) conversion by Teuila Hawaii, (8) tortious interference with contract by Robert's Hawaii, and (9) aiding and abetting breach of fiduciary duty by Robert's Hawaii.

3

Fed. R. Civ. P. 26(b)(1).  Notably, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable."  Id.  "The scope and conduct of discovery are within the sound discretion of the district court."  Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co., 56 F.3d 556, 568 n.16 (4th Cir. 1995) (citing Erdmann v. Preferred Rsch., Inc. of Ga., 852 F.2d 788, 792 (4th Cir. 1988)); see also U.S. ex rel. Becker v. Westinghouse Savannah River Co., 305 F.3d 284, 290 (4th Cir. 2002) (stating that district courts are afforded "substantial discretion . . . in managing discovery").

If a party declines to comply with a discovery request, the serving party "may move for an order compelling an answer, designation, production, or inspection."  Fed. R. Civ. P. 37(a)(3)(B).  An evasive or incomplete disclosure, answer, or response, "must be treated as a failure to disclose, answer or respond."  Fed. R. Civ. P. 37(a)(4).  District courts have "wide latitude in controlling discovery and [their] rulings will not be overturned absent a showing of clear abuse of discretion."  Ardrey v. United Parcel Serv., 798 F.2d 679, 683 (4th Cir. 1986); In re MI Windows & Doors, Inc. Prod. Liab. Litig., 2013 WL 268206, at *1 (D.S.C. Jan. 24, 2013).

### B.  Motion for Summary Judgment

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

4

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

### III.   DISCUSSION

There are two motions before the court: Hawaii Discount's motion to compel and defendants' motion for partial summary judgment. The court addresses the motion to compel first, followed by the motion for partial summary judgment.

### A.  Motion to Compel

Hawaii Discount requests an order from the court compelling defendants to fully respond to its First Requests for Production. Hawaii Discount served those requests on October 21, 2021. Defendants requested—and Hawaii Discount agreed to—two extensions, and on January 14, 2022, defendants produced responses to the First Requests for Production. The email containing the responses stated: "We are still receiving materials from the client and will continue rolling them out as they come in over next [sic] few days." ECF No. 42-2 at 4. According to Hawaii Discount, defendants maintained a slow pace of production over the following four weeks, producing some documents but failing to produce other relevant documents in their possession. Consequently, on February 11, 2022, Hawaii Discount filed the instant motion to compel.

5

In their response, defendants claim that they were producing relevant and nonprivileged documents as they were received, and they produced their final response to Hawaii Discount's First Requests for Production on February 11, 2022—the same day that Hawaii Discount filed its motion to compel.  In fact, according to defendants, Hawaii Discount filed the instant motion a mere seventeen minutes before defendants sent their final production.  While Hawaii Discount did not file a reply or otherwise indicate dissatisfaction with defendants' final production, Hawaii Discount never formally withdrew its motion either.  At the hearing, Hawaii Discount stated, for the first time, that it had intended to file an amended motion to compel containing its outstanding objections to the production.  On June 28, 2022, Hawaii Discount filed its second motion to compel discovery.  ECF No. 59.  That motion purported to "narrow[] the issues" down to six requests for production.  Id. at 1.

In light of the second motion to compel discovery, the court denies the instant motion to compel as moot.  The court will review Hawaii Discount's arguments anew when the second motion to compel is fully briefed and ripe for review.

**B.  Motion for Partial Summary Judgment**

Defendants request that the court grant summary judgment in their favor on all of Hawaii Discount's claims and on Teuila Hawaii's first counterclaim.  That counterclaim seeks a declaratory judgment stating (1) that no partnership exists between Teuila Hawaii and Hawaii Discount, and (2) that Hawaii Discount has no interest in the Chief's Luau domain name, website, or any other aspect of Teuila Hawaii's business.  Ans. & Countercl. ¶ 75.  In essence, then, defendants move for this action to proceed solely on Teuila Hawaii's remaining eight counterclaims.

The parties' briefs raise four separate issues. First, Hawaii Discount argues that defendants' motion is premature because discovery in the case is still ongoing. Second, defendants argue that summary judgment is warranted in their favor because Hawaii Discount and Teuila Hawaii did not form a partnership. Third, defendants argue that regardless of whether a partnership was formed, Teuila Hawaii is entitled to summary judgment on Hawaii Discount's remaining claims related to breach of contract and improper use of a federal mark. Finally, defendants argue that Robert's Hawaii is also entitled to summary judgment on both claims raised against it. The court addresses each of these issues in turn.

### 1. Summary Judgment and Pending Discovery

As a preliminary matter, Hawaii Discount argues that summary judgment is premature because discovery remains ongoing. According to Hawaii Discount, its motion to compel remains pending and no depositions have been taken in this case.

Federal Rule of Civil Procedure 56 does not require trial courts to allow parties to conduct discovery before entering summary judgment. Anzaldula v. Ne. Ambulance and Fire Prot. Dist., 793 F.3d 822, 836 (8th Cir. 2015); see Fed. R. Civ. P. 56(b). However, the general rule is that "summary judgment should only be granted 'after adequate time for discovery.'" Patrick v. PHH Mortg. Corp., 988 F. Supp. 2d 478, 484 (N.D. W. Va. 2014) (quoting Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986)). "Summary judgment before discovery forces the non-moving party into a fencing match without a sword or mask." McCray v. Md. Dep't of Transp., Md. Transit Admin., 741 F.3d 480, 483 (4th Cir. 2014). As a result, Rule 56(d) provides that "summary judgment [should] be denied when the nonmovant 'has not had the opportunity to discover information that

is essential to his opposition.'" <u>Pisano v. Strach</u>, 743 F.3d 927, 931 (4th Cir. 2014)

(quoting <u>Ingle ex rel. Est. of Ingle v. Yelton</u>, 439 F.3d 191, 195 (4th Cir. 2006)).

The typical recourse for the nonmoving party is to file a Rule 56(d) motion, which

allows the party to represent through an "affidavit or declaration that, for specified

reasons, [the party] cannot present facts essential to justify its opposition." Fed. R. Civ.

P. 56(d). "[T]he nonmoving party cannot complain that summary judgment was granted

without discovery unless that party had made an attempt to oppose the motion on the

grounds that more time was needed for discovery or moved for a continuance to

permit discovery before the district court ruled." <u>Evans v. Techs. Applications & Serv.</u>

<u>Co.</u>, 80 F.3d 954, 961 (4th Cir. 1996). Here, however, instead of a Rule 56(d) affidavit or

declaration, Hawaii Discount only makes a general claim that "additional testimony is

necessary." ECF No. 49 at 20. Hawaii Discount did not file a Rule 56(d) affidavit or

otherwise specify what essential facts have yet to be discovered. As such, the court lends

some weight, where relevant, to the fact that discovery is incomplete but proceeds to

determine whether a genuine dispute of material fact exists based on the current evidence

on the record.

### 2. Existence of a Partnership

Hawaii Discount's second cause of action alleges that Teuila Hawaii "[was] in a

Partnership with Hawaii Discount for the creation and operation of Chief's Luau," and as

a result, "the parties owed fiduciary duties to one another." Amend. Compl. ¶ 33. Teuila

Hawaii argues that the parties were not in a partnership, and the court may thus

summarily find that Teuila Hawaii did not breach a fiduciary duty. The parties, in

arguing whether a common law partnership existed, cite South Carolina law. Given the consensus, the court is satisfied that South Carolina law applies.[3]

Under South Carolina law, a partnership is "an association of two or more persons to carry on as co-owners [of] a business for profit." S.C. Code Ann. § 33-41-210. Defendants argue that the court may determine that no partnership existed and grant summary judgment because under South Carolina law, neither the written agreements between the parties nor acts of the parties evince an intention to form a common law partnership. The court considers each potential basis for asserting a common law partnership in turn.

### a. Partnership by Written Agreement

Parties to a contract are considered partners where "their acts, conduct, or agreement show that they intended to combine their property, labor, skill and experience, or some of these elements on one side, and some on the other, to carry on, as principals or co-owners, a common business, trade, or venture . . . and to share, either expressly or by implication, the profits and losses or expenses that may be incurred." Moore v. Moore, 599 S.E.2d 467, 477 (S.C. Ct. App. 2004) (citing Stephens v. Stephens, 50 S.E.2d 577, 580 (1948)). According to defendants, the best evidence for determining the existence of a partnership is the text of any agreements between the parties. In support, defendants

---

[3] As further assurance, it appears the parties are right to cite South Carolina law. Even though defendants argue that the agreements did not form a partnership, an agreement that is the source of an allegation that a partnership was formed may help determine which state law to apply. See Great Lakes Overseas, Inc. v. Wah Kwong Shipping Grp., Ltd., 990 F.2d 990, 994 (7th Cir. 1993) (affirming district court decision to apply English law because the agreement that allegedly formed the partnership specified application of English law). Here, the Agreement, which Hawaii Discount alleges is the source of the partnership, contains a choice-of-law provision stating that the contract shall be governed by South Carolina law. ECF No. 46-3 at 3.

cite a South Carolina treatise on partnerships; however, it appears that no court has yet to formally adopt the rule as stated.  See 28 S.C. Jur. Partnerships & Joint Ventures § 7, Written partnership agreements (2022) ("While a partnership may be formed by oral agreement, the best evidence of partnership consists of the parties' written agreement of contract.").  Even so, Hawaii Discount does not dispute the importance of the written agreements, and the court likewise agrees that the text of any agreements may be tantamount to determining whether the parties intended to form a partnership.  "One of the most important tests as to the existence of a partnership is the intention of the parties," Stephens, 50 S.E.2d at 579, and "[t]he best evidence of the parties' intent is [a] contract's plain language," N. Am. Rescue Prods., Inc. v. Richardson, 769 S.E.2d 237, 240 (S.C. 2015).

Turning to the agreements, courts in South Carolina traditionally look to three primary factors.  "[T]o prove a partnership, a party must show '(1) the sharing of profits and losses; (2) community of interest in capital or property; and (3) community of interest in control and management.'"  Dombrek v. Adler, 2019 WL 459019, at *4 (D.S.C. Feb. 5, 2019) (quoting Moore, 599 S.E.2d at 477).  Here, the court finds that there is no genuine issue of material fact as to whether the 2012 Agreement and 2013 Agreement meet these three elements.  They clearly do not.  Under the first factor, the agreements set forth that Hawaii Discount would provide services in exchange for a percent-based commission.  ECF Nos. 46-2 at 2, 46-3 at 2.  Hawaii Discount only received commission on its own sales; it did not receive any "from sales made through any other sales channels."  Id.  Hawaii Discount maintains that the commission it received was indeed a share of the profits.  However, this arrangement is clearly not the type of sharing of

profits or losses contemplated in partnerships.  Compare KCI Mgmt. Corp. v. Post, 2004

WL 6249216, at *8 (S.C. Ct. App. Mar. 1, 2004) (upholding a jury finding that no

partnership existed under the sharing of profits or losses factor where the defendant "was

to share in the profits if and only if the projects were successful enough to produce

profits"), with Halbersberg v. Berry, 394 S.E.2d 7, 10 (S.C. Ct. App. 1990) (finding a

partnership existed where the expenses were paid from the profits of the operation, profits

"split fifty-fifty," and losses were shared in the same manner).  If every commission-

based payment scheme resulted in a partnership, partnerships—and partnership

liability—would exist for virtually every individual in the sales industry.  Second, there is

nothing in the agreements that suggests that Hawaii Discount and HSE had a communal

interest in capital or property.  Hawaii Discount argues that the 2012 Agreement provides

that it "own[ed]" the Chief's Luau website.  See ECF No. 46-2 at 2.  Defendants respond

that the 2013 Agreement "clarified" that Hawaii Discount would only "control" the

website in the sense that Hawaii Discount would manage it.  ECF No. 46 (citing ECF No.

46-3 at 2).  Regardless, even if Hawaii Discount is correct that it owned the website—and

the website could be considered "property"—such an argument weighs against Hawaii

Discount.  The fact that Hawaii Discount exclusively owned the website to the exclusion

of Teuila Hawaii, if true, would run contrary to the notion that the parties combined their

capital and property to carry on as principals or co-owners.  Finally, under the third

factor, the court finds that nothing in the agreements suggests that the parties shared

control or management of Chief's Luau.  Rather, both agreements plainly state that

Chief's Luau was engaging Hawaii Discount "to provide services . . . in exchange for

commission."  ECF Nos. 46-2 at 2, 46-3 at 2 (emphasis added).

Notably, the 2012 Agreement contained an "Additional Terms and Conditions" addendum.  ECF No. 46-2 at 3.  The addendum stated that Hawaii Discount was "an independent contractor" and would be solely responsible for its own employees.  Id.  Additionally, the 2012 Agreement stated that "[n]othing in this agreement shall be construed to constitute either party as a partner or joint venturer of the other."  Id.  To combat this compelling evidence, Hawaii Discount argues that the additional terms are missing from the 2013 Agreement, and the 2013 Agreement was intended to supersede the 2012 Agreement.  Whether the 2013 Agreement was intended to include the "Additional Terms and Conditions" is a source of great dispute between the parties.  No formal copy of the 2013 Agreement containing the additional terms has been produced in discovery.  Defendants argue that when Sax's signed copy was sent back to Hawaii Discount, the additional pages were omitted because they "did not contain a signature block for Sax to sign."  ECF No. 46 at 6 n.1.  Moreover, defendants argue that in the 2013 Agreement, there is a section before the signature block that states "See additional terms & conditions following signatures," indicating that the additional terms were intended to be included.  ECF No. 46-3 at 3.  Hawaii Discount asks the court to disregard the additional terms and conditions, arguing that it should be excluded from the 2013 Agreement since there was no meeting of the minds, and any evidence that it was intended to be included by the parties is beyond the four corners of the 2013 Agreement. The court finds both arguments unavailing.  Under South Carolina law, "to have a valid and enforceable contract, there must be a meeting of the minds between the parties with regard to all essential and material terms of the agreement."  Player v. Chandler, 382 S.E.2d 891, 893 (S.C. 1989) (emphasis in original).  A term elevating Hawaii Discount to

a partner instead of retaining its independent contractor status from the 2012 Agreement would appear to be essential and material, but Hawaii Discount simultaneously maintains that the 2013 Agreement is enforceable. Both cannot be true. Hawaii Discount also mistakenly argues that the court cannot look beyond the 2013 Agreement. But "unlike a contract, '[a] partnership agreement may rest in parol.'"[4] Dombek, 2019 WL 459019, at *4 (quoting Moore, 599 S.E.2d at 472) (alterations in original). The court thus finds it compelling that the additional terms were included in the 2012 Agreement, along with the fact that the 2013 Agreement referenced an "additional terms & conditions" section. Altogether, there is no genuine issue of material fact that the agreements did not create a partnership between the parties.

### b. Partnership by Implication

While the court finds that the agreements are sufficient for deciding summary judgment on the partnership issue, for Hawaii Discount's benefit, it also considers whether a partnership could have been established by implication. In situations where a written agreement does not specifically designate the parties as partners, "[a] partnership may be found to exist by implication from the parties' conduct." Corley v. Ott, 485 S.E.2d 97, 99 (S.C. 1997); see Stephens, 50 S.E.2d at 579 (observing that parties may "become partners whether they are designated as such or not in the contract"); Halbersberg, 394 S.E.2d at 10 (noting that a partnership agreement "may be implied and without express intention").

---

[4] What is good for the goose is good for the gander. By the same token, the court disregards defendants' argument that the affidavits cited by Hawaii Discount, discussed infra, constitute parol evidence and should not be considered by the court.

To decide whether a partnership was implied, courts look to the same three factors as before: "(1) the sharing of profits and losses; (2) community of interest in capital or property; and (3) community of interest in control and management." <u>Moore</u>, 599 S.E.2d at 477. Hawaii Discount disagrees, arguing that when it comes to evaluating the conduct of the parties, "there is no set checklist of required elements or facts." ECF No. 49 at 7. But Hawaii Discount's position is not supported by the caselaw. Courts consistently apply the same three factors regardless of whether they are determining intent through words or conduct. <u>See, e.g.</u>, <u>Pierside Boatworks, Inc. v. Owens</u>, 2017 WL 9360878, at *5 (D.S.C. Nov. 17, 2017) (applying the three factors to both the written agreement and conduct of the parties); <u>Halbersberg</u>, 394 S.E.2d at 10 (same).

Based on the record before the court, nothing beyond the words in the agreements further suggests that the three factors have been met. First, for reasons already discussed, the parties did not share profits and losses because commission-based payments are not enough to demonstrate a sharing of profits. Similarly, as the court previously discussed, Hawaii Discount's ownership or control of the Chief's Luau website does not equate to a communal interest in capital or property. Hawaii Discount's most compelling argument falls under the third factor. Specifically, Hawaii Discount argues that control and management of Chief's Luau must have been shared because Sax "openly acknowledged that he did not have full control of Chief's Luau." ECF No. 49 at 15. Hawaii Discount refers to an email that Sax wrote to John Fradella ("Fradella"), the president of Hawaii Discount, stating, "We need to be in control of our business. It's a basic necessity for us. To not have control of one's business is a really big issue." ECF No. 49-4 at 3. But Hawaii Discount omits critical context surrounding the quoted passage. Directly above

the passage, Sax clearly indicates that he is referring to the call center and server name. Id. ("Call center…I want to move it back. Nameserver…I want to move it back."). Directly below the passage, he again specifies that "I don't want to do my own website" but wanted "to have control over our business name out there." Id. In the light most favorable to Hawaii Discount, as the nonmovant, the email demonstrates a genuine dispute over the ownership of the website, but not the existence of a partnership. Ultimately, control of the website alone does not equate to shared control and management over the entire enterprise. See Brown v. OCA, Inc., 2008 WL 4758622, at *6 (D.S.C. Oct. 30, 2008) (discussing hallmarks of a partnership, including when the parties keep the books together and share in management decisions). In sum, none of the three traditional factors suggest that a partnership existed.

Instead of arguing that the three factors were met, Hawaii Discount contends through several affidavits that the parties recognized and discussed that they were partners. For example, Hawaii Discount cites an affidavit from Kanani Mokiano-Lee ("Mokiano-Lee"), an operations manager at Chief's Luau from 2014 to 2019. According to Mokiano-Lee, "Hawaii Discount was in control of all things online, from the website to online ticket sales, and shared Chief Luau [sic] profits." ECF No. 49-14, Mokiano-Lee Aff. ¶ 3. Mokiano-Lee also stated, "it was known . . . that the nature of the relationship" was "intended as a partnership." Id. Hawaii Discount cites other affidavits that reflect the same premise. For example, Fradella stated in an affidavit that "Sax approached [Hawaii Discount] about a partnership." ECF No. 49-2, Fradella Aff. ¶ 5. Brandon Call, a "colleague" of Sax and Fradella, claimed to have witnessed a meeting where "Sax and Fradella routinely used the terms 'partners' and 'partnership' to discuss the intention of

what they were doing."  ECF No. 49-13, Call Aff. ¶ 5.  Elizabeth LeFevre, Fradella's sister who operated a subsidiary of Hawaii Discount that ran Chief's Luau's social media accounts, attended the same meeting and stated that after the meeting, everyone believed that "a partnership had been formed between Edward Sax's company and Hawaii Discount."  ECF No. 49-12, LeFevre Aff. ¶ 3.

Nevertheless, none of the testimony cited by Hawaii Discount rebuts the evidence reflecting the lack of a partnership.  "[T]he mere use of the term 'partner' in the colloquial sense does not suffice to allege a partnership."  See Dombek, 2019 WL 459019, at *4 (citing Message Sys., Inc. v. Integrated Broadband Servs., LLC, 2010 WL 2891706, at *5 (D. Md. July 20, 2010)).  "Mere passing references to the existence of a partnership, even if made by the party against whom the claim is made, do not create a legal partnership in the absence of an agreement to share losses or an agreement to share control of management."  Hill Holiday Connors Cosmopulos, Inc. v. Greenfield, 2010 WL 11530830, at *10 (D.S.C. Apr. 8, 2010) (emphasis and citations omitted).  Similarly, mere "conclusory arguments and unsupported allegations" regarding a partnership or fiduciary duty are insufficient.  Id.  Yet that is precisely what Hawaii Discount's evidence amounts to.  Even in the light most favorable to Hawaii Discount, the personal beliefs held by Fradella, LeFevre, Mokiano-Lee, Call, and others that a partnership existed are not evidence that one in fact existed.  Likewise, testimony that individuals—including Sax—referred to the relationship as a partnership is, absent more, merely evidence of the term being used in a colloquial sense.  Therefore, the court finds that even if it were to look beyond the 2012 and 2013 Agreement, it cannot be genuinely disputed that no partnership existed.

### c. Effect on the Claims

Having determined that Hawaii Discount and Teuila Hawaii were not engaged in a common law partnership, the court now turns to the effect that determination has on the various claims at issue. Hawaii Discount's first cause of action seeks a declaratory judgment (1) stating that the business dealings between Hawaii Discount and Teuila Hawaii were part of a common law partnership; (2) determining that the assets of the partnership include the Chief's Luau trademark, internet domain name, and social media accounts; (3) finding that there is no trademark, domain name, trade dress, or copyright infringement by Hawaii Discount because it had the responsibility and right to promote the mark through the partnership; and (4) seeking an accounting of the partnership. Amend. Compl. ¶ 30. The court grants summary judgment in defendants' favor on this cause of action because there was no partnership and thus, there could not have been partnership assets. However, for reasons referenced within the partnership issue, the court finds that there is a genuine issue of material fact as to whether Hawaii Discount infringed on any trademark or copyright or if "it is the owner of www.ChiefsLuau.com." Id. ¶ 30–31. Specifically, Hawaii Discount has presented a genuine dispute as to whether it owned the Chief's Luau website under the 2012 Agreement and whether the 2013 Agreement revoked said ownership by continuing to state that Hawaii Discount would control the website. Sax's email to Fradella, although not evidence of a partnership, similarly presents a triable issue as to the ownership of the website. See generally ECF No. 49-4.

Mirroring Hawaii Discount's first cause of action, Teuila Hawaii's first counterclaim seeks a declaratory judgment stating (1) that no partnership exists between

Teuila Hawaii and Hawaii Discount and (2) that Hawaii Discount has no interest in Chief's Luau's domain name, website, or any other aspect of Teuila Hawaii's business. Ans. & Countercl. ¶ 75. The court grants summary judgment in defendants' favor on the first declaratory judgment sought because it finds that no partnership existed. However, the court cannot conclusively find at this stage that Hawaii Discount has no interest in the domain name or website. To be sure, defendants present valid arguments of their own. The Chief's Luau trademark and trade name are registered under Teuila Hawaii. Teuila Hawaii submits that it retained the ultimate authority to add or remove content on the website. ECF No. 57 at 11 (citing ECF No. 46-3 ¶ 8). On the other hand, Hawaii Discount has provided sworn statements that it designed the website and that Sax transferred ownership of the website to Hawaii Discount on the domain housing company, GoDaddy. See ECF No. 49-16, Turok Aff. ¶¶ 6, 8. A reasonable juror could conclude that the existing evidence supports Hawaii Discount's argument that it owned the website, and additional discovery may even help clarify the issue. Accordingly, the court declines to issue a declaratory judgment on the ownership of the Chief's Luau domain name or website at this stage.

Hawaii Discount's second cause of action alleges a breach of fiduciary duty. In the absence of a partnership, a breach of fiduciary claim must be "predicated on the alleged special trust and confidence that existed between the parties." See Consol. Insured Benefits, Inc. v. Conseco Med. Ins. Co., 2006 WL 3423891, at *13 (D.S.C. Nov. 27, 2006). Here, Hawaii Discount's second cause of action only alleges a partnership; it does not allege any other sort of special trust or confidence. As such, the court grants summary judgment in defendants' favor on the second cause of action.

The parties agreed at the hearing that the partnership determination has no bearing on the remaining causes of action. The court groups the remaining claims and proceeds to analyze them in turn. First, Hawaii Discount alleges two breach of contract claims against Teuila Hawaii: (3) breach of contract and (4) breach of contract accompanied by a fraudulent act against Teuila Hawaii. Second, Hawaii Discount alleges multiple causes of action against Teuila Hawaii related to the Chief's Luau mark. These include: (5) unfair competition in violation of 15 U.S.C. § 1125(a), (6) fraudulent assignment, and (7) conversion. Finally, Hawaii Discount's alleges two claims against Robert's Hawaii: (8) tortious interference with contract and (9) aiding and abetting a breach of fiduciary duty.

### 3.  Breach of Contract

Defendants argue that Teuila Hawaii is entitled to summary judgment on the breach of contract and breach of contract with fraudulent intent claims. Specifically, defendants argue that (1) Teuila Hawaii was not a party to the contract, (2) Hawaii Discount has not provided sufficient facts to support its claims, and (3) the agreements terminated before any alleged breaches occurred. The court considers each argument in turn, ultimately finding that summary judgment is not warranted, and Hawaii Discount will be permitted to proceed on its breach of contract claims.

### a.  Party to the Contract

First, defendants argue that Teuila Hawaii was not a party to either the 2012 or 2013 Agreement, and, as such, Hawaii Discount cannot maintain a breach of contract claim against Teuila Hawaii. Both the 2012 Agreement and 2013 Agreement were

signed by Sax, on behalf of HSE.[5]  ECF Nos. 46-2 at 2; 46-3 at 3.  According to

defendants, the contract was never assigned to, or assumed by, Teuila Hawaii.  In

response, Hawaii Discount first claims that it did not learn of Teuila Hawaii's existence

or that it was created to replace HSE until 2021.  It is unclear what the legal import of this

argument is as it relates to the existence of a valid contract, and Hawaii Discount does not

expound on it.  Hawaii Discount then argues, albeit in the same section defending its

tortious interference with contract claim against Robert's Hawaii, that "Sax's admission

that Teuila Hawaii[] 'did business with Hawaii Discount, as well'" establishes a genuine

dispute as to whether Teuila Hawaii was part of the contract.  ECF No. 49 at 18.

Although Hawaii Discount's argument is far from the model of clarity, Hawaii Discount

appears to be arguing that Teuila Hawaii was the successor in HSE's interest in the

contract.

A successor ordinarily is not liable for the debts of a predecessor unless (1) there

was an agreement to assume such debts, (2) the circumstances surrounding the

transaction warrants a finding of a consolidation or merger of the two corporations, (3)

the successor company was a mere continuation of the predecessor, or (4) the transaction

was entered into fraudulently for the purpose of wrongfully defeating creditors' claims.

Brown v. American Ry. Express Co., 123 S.E. 97, 98–99 (S.C. 1924).  Courts apply the

"general rule expressed in Brown" to determine successor liability in the context of

contract succession as well.  Simmons v. Mark Lift Indus., Inc., 622 S.E.2d 213, 217

(S.C. 2005) (collecting cases).  Here, a genuine dispute of material fact exists as to the

---

[5] Sax signed on behalf of "Chief's Luau," but both the 2012 and 2013 Agreement specified that "Chief's Luau" referred to "Hawaii Sunset Events LLC dba Chief's Luau." ECF Nos. 46-2 at 2; 46-3 at 2.

second, third, and fourth exceptions.  Under the fourth exception, for example, courts look to whether "the predecessor and successor corporations have substantially the same officers, directors, or shareholders, and the business continues largely unchanged."  Id. (citations omitted).  Even if the court sets aside Hawaii Discount's argument that Sax formed Teuila Hawaii for the sole purpose of excluding Hawaii Discount, the record evidence sufficiently demonstrates that Sax was the president of both HSE and Teuila Hawaii—at least before the latter was purchased by Robert's Hawaii.  Since a reasonable juror could find that Teuila Hawaii is a successor-in-interest, the fact that it was absent in the agreements is not enough to grant summary judgment in Teuila Hawaii's favor.

### b.  Evidence of Breach of Contract

Next, defendants contend that even if Teuila Hawaii were a party to the agreements, Hawaii Discount has failed to present a genuine dispute of material fact as to whether Teuila Hawaii breached those contracts.  In response, Hawaii Discount argues that Sax and defendants covertly created a rival website and refused to honor Hawaii Discount's ticket sales.  Mokiano-Lee stated, for example, that Sax "informed me he was trying to build a second website to replace and oust Hawaii Discount . . . . I was told to keep this information from John Fradella and Hawaii Discount because it owned www.chiefsluau.com and he knew the second website would be a breach of the [] agreement."  Mokiano-Lee Aff. ¶ 5.  But defendants claim these actions alone do not violate the agreements.  The court finds that this is a triable issue, particularly as discovery remains ongoing.  Even if the parties were not partners, the contract specifies that "Chief's Luau will make best efforts to not allow any company other than HawaiiDiscount to advertise discounted Chief's Luau tickets online."  ECF No. 46-3 ¶ 7.

Whether defendants violated that provision by ordering Hawaii Discount to cease selling Chief's Luau tickets and by running its own ticket sales website is a question of fact for the jury.

### c.  Termination of the Agreement

Finally, defendants argue that even if Teuila Hawaii were a party to the agreements and there had been an act constituting a breach, Teuila Hawaii terminated the 2013 Agreement before any of the alleged breaches occurred.  Defendants refer to a notice sent by Roy Pfund ("Pfund")—Robert's Hawaii's chief executive officer and manager of Teuila Hawaii—to Fradella on July 12, 2021 notifying Fradella that Chief's Luau would cease accepting any reservations originating from Hawaii Discount starting on July 14, 2021.  ECF No. 6-7 at 5.  Defendants contend that because they only refused to honor any reservations made by Hawaii Discount after Robert's Hawaii terminated the 2013 Agreement, Teuila Hawaii did not breach the contract.  Viewed in the light most favorable to Hawaii Discount, however, the letter did not terminate the 2013 Agreement but instead constituted a breach of the contract.  Nothing in the letter specifically stated that it was terminating the Agreement.  Rather, it stated that Chief's Luau would "no longer accept any new bookings for Chief's Luau products and packages" from Hawaii Discount.  Id.  Certainly, a jury could ultimately find that the letter terminated the agreement—in which case, the court would likely allow the jury to find that Teuila Hawaii was entitled to do so.  See Doe v. TCSC, LLC, 846 S.E.2d 874, 879 (S.C. Ct. App. 2020) (citing Childs v. City of Columbia, 70 S.E. 296, 298 (S.C. 1911)) (finding that where a contract "is silent as to the material element of duration, that merely ma[kes]

the contract terminable at will by either party upon reasonable notice to the other").  At this stage, however, the court finds that the matter is a question of fact for the jury.

### 4.  Federal Mark Claims

Despite arguing that they "are entitled to summary judgment on all claims asserted by Hawaii Discount," defendants do not direct any arguments toward proving why summary judgment is warranted for the claims related to Chief's Luau's federal service mark.  For the reasons discussed earlier in the context of the partnership issue, and in light of ongoing discovery, the court finds that there is a genuine issue of material fact as to the ownership of the Chief's Luau mark underlying each of these claims.

### 5.  Claims Against Robert's Hawaii

Finally, defendants argue that Robert's Hawaii is not liable for either of the two claims asserted against it.  Those claims are Hawaii Discount's eighth cause of action for tortious interference with contract and ninth cause of action for aiding and abetting a breach of fiduciary duty.  Defendants first reiterate their prior arguments—that Teuila Hawaii did not breach a contract and Teuila Hawaii did not breach a fiduciary duty because it was not Hawaii Discount's partner—to argue that Robert's Hawaii could not have tortiously interfered with a contract or a fiduciary relationship.  The court, in accordance with its findings on those respective issues, partially agrees.  Robert's Hawaii is entitled to summary judgment on the claim alleging that it aided and abetted a breach of fiduciary claim because there was no breach of fiduciary duty that it could have participated in or encouraged.  However, the court finds that defendants' argument does not move the needle on the tortious interference with contract claim because the court

determined that a valid contract existed and there is a genuine dispute as to whether Teuila Hawaii was a successor to HSE's interest in it.

In the alternative, defendants argue that Robert's Hawaii is entitled to summary judgment due to the so-called "stranger doctrine." ECF No. 46 at 19. To state a claim for tortious interference of contract, a plaintiff must allege (1) the existence of a contract; (2) the defendant's knowledge of the contract's existence; (3) the defendant's intentional procurement of the breach of the contract; (4) the absence of justification; and (5) resulting damage. Camp v. Springs Mortg. Corp., 426 S.E.2d 304, 305 (S.C. 1993). However, a plaintiff must show that "the defendant was a stranger to both the contract at issue and the business relationship giving rise to and underpinning the contract." Callum v. CVS Health Corp., 137 F. Supp. 3d 817, 861 (D.S.C. 2015) (citing Dutch Fork Dev. Grp. II, LLC v. SEL Props., LLC, 753 S.E.2d 840, 844 (S.C. 2012)). While South Carolina courts recognize the stranger doctrine, courts have also specified that South Carolina's approach to the stranger doctrine is "more narrow" than that taken by other states adopting the doctrine. BCD, LLC v. BMW Mfg. Co., LLC, 2007 WL 128887, at *2 (D.S.C. Jan. 12, 2007). Specifically, courts in South Carolina have found that parties "engag[ed] in legitimate business activity," such as third parties to a contract, are not strangers and are thus protected from the tort. Id. However, unlike other states, South Carolina's application of the stranger doctrine does not extend to "all parties to an interwoven contractual agreement." Id. (citing Atlanta Mkt. Ctr. Mgmt. Co. v. McLane, 503 S.E.2d 278, 283 (Ga. 1998)). In other words, the stranger doctrine does not necessarily protect every party with a remote interest in the agreement. Here, the court agrees that had Teuila Hawaii breached the 2013 Agreement only after it was purchased

by Robert's Hawaii, Robert's Hawaii would not—even under the most lenient interpretation of the rule—be considered a "stranger" to the agreement. For its part, Hawaii Discount does not dispute the applicability of the stranger doctrine but does argue that Robert's Hawaii interfered with the Agreement <u>before</u> it purchased the majority interest in Teuila Hawaii. In its reply, defendants argue that Hawaii Discount's timeline "is inconsistent with the Amended Complaint and the undisputed facts." ECF No. 57 at 11. Specifically, they point out that Robert's Hawaii became the majority member of Teuila Hawaii in January 2020, and the alleged breach did not occur until July 14, 2021, after the notice of termination was sent. The court finds that viewed in the light most favorable to Hawaii Discount, there are both well-pled allegations and evidence supporting Hawaii Discount's position. The amended complaint alleges that "Robert's Hawaii determined that it could do the work that Hawaii Discount was doing . . . and [was] determined to force it out." Amend. Compl. ¶ 17. This allegation makes no reference to a particular date and could plausibly be referring to Robert's Hawaii's actions before it purchased Teuila Hawaii. Indeed, Mokiano-Lee stated that "[a]bout the same time" as 2018, Sax began having conversations with Robert's Hawaii about purchasing the luau. Mokiano-Lee Aff. ¶¶ 5–6. Hawaii Discount has submitted that those discussions were part and parcel with Robert's Hawaii's attempts to undermine the relationship between Hawaii Discount and Teuila Hawaii. Thus, the facts, when viewed in the light most favorable to Hawaii Discount, lead the court to conclude that Robert's Hawaii was conceivably a stranger to the contract at the time it began to tortiously interfere with the contractual relationship. Again, a jury could ultimately conclude that Teuila Hawaii's actions did not constitute a breach or that Robert's Hawaii did not

interfere until after January 2020—if at all—but at this stage, the court finds that Hawaii Discount's claims survive summary judgment.

## IV.  CONCLUSION

For the reasons set forth above, the court **DENIES** Hawaii Discount's motion to compel and **GRANTS IN PART** and **DENIES IN PART** defendants' motion for partial summary judgment.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**July 18, 2022**
**Charleston, South Carolina**

26