**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| HAWAII DISCOUNT, LLC, d/b/a Hawaiidiscount.com, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) No. 2:21-cv-02011-DCN ) ) **ORDER** |
| TEUILA HAWAII, LLC and ROBERT'S HAWAII, INC., | ) ) ) |
| Defendants. | ) ) ) |

The following matter is before the court on plaintiff Hawaii Discount, LLC's ("Hawaii Discount") second motion to compel, ECF No. 59. For the reasons set forth below, the court grants the motion in part and finds it moot in part.

**I.   BACKGROUND**

This matter arises out of a failed business relationship. Edward Sax ("Sax") originally sought to create a traditional Hawaiian luau show—known as Chief's Luau—based in Oahu, Hawaii. Sax and his business partner, Folosielu Avea, formed Hawaii Sunset Events, LLC ("HSE"), with Sax serving as the president. To bring the show to fruition, HSE sought the help of Hawaii Discount, a company that sells discount tickets through online portals to tourist attractions, tours, and events across Hawaii. HSE and Hawaii Discount entered into an agreement on February 12, 2012 (the "2012 Agreement"). ECF No. 46-2. Under the terms of the 2012 Agreement, Hawaii Discount would "rebuild, optimize, and own" Chief's Luau's website while promoting Chief's Luau on its other platforms. Hawaii Discount also agreed to operate a call center for Chief's Luau's ticket sales. In 2013, HSE and Hawaii Discount modified the 2012

Agreement (the "2013 Agreement"). ECF No. 46-3. Among other changes, the 2013 Agreement changed the commission structure and specified that Hawaii Discount would "rebuild and optimize" the Chief's Luau website and would "control[]" the website URL. Id. at 2.

According to Hawaii Discount, as Chief's Luau's success grew, so did Sax's ambition to own a greater degree of control over the brand. Hawaii Discount alleges that as part of that plan, Sax created a holding company, defendant Teuila Hawaii, LLC ("Teuila Hawaii"), which became the holder of HSE's interest in the Agreement. In 2020, HSE and Teuila Hawaii were dissolved and sold to a group of buyers that included defendant Robert's Hawaii, Inc. ("Robert's Hawaii"). Hawaii Discount alleges that together, Teuila Hawaii and Robert's Hawaii breached the Agreement due to a belief that Robert's Hawaii could perform the work that Hawaii Discount was doing.

On June 16, 2021, Hawaii Discount filed a complaint against HSE[1] and Teuila Hawaii in the Charleston County Court of Common Pleas, seeking a declaratory judgment that the parties were engaged in a common law partnership and that Hawaii Discount was the owner of the Chief's Luau website and domain name. ECF No. 1-1, Compl. On July 6, 2021, Teuila Hawaii removed the action to this court. ECF No. 1. On July 28, 2021, Hawaii Discount filed its first amended complaint, ECF No. 6, whereby it added Robert's Hawaii (together with Teuila Hawaii, "defendants") as a defendant and asserted eight additional causes of action.[2] On August 11, 2021,

---

[1] On March 3, 2022, the court entered an order dismissing HSE as a defendant due to the lapse of Hawaii's nonclaim statute governing suits against dissolved limited liability companies. ECF No. 45.

[2] These are, in order: (2) breach of fiduciary duty, (3) breach of contract, (4) breach of contract accompanied by fraudulent act by HSE and Teuila Hawaii, (5) unfair

2

defendants filed an answer, whereby Teuila Hawaii further asserted nine counterclaims against Hawaii Discount. ECF No. 8, Ans. & Countercl.

On June 28, 2022, Hawaii Discount filed its second motion to compel. ECF No. 59. On July 12, 2022, defendants responded in opposition. ECF No. 60. Hawaii Discount did not file a reply, and the time to do so has now expired. On August 4, 2022, the court held a hearing on the motion. ECF No. 66. As such, Hawaii Discount's second motion to compel has been fully briefed and is now ripe for review.

## II.  STANDARD

Federal Rule of Civil Procedure 26 provides that, unless otherwise limited by court order,

> [p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden of expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Notably, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Id. "The scope and conduct of discovery are within the sound discretion of the district court." Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co., 56 F.3d 556, 568 n.16 (4th Cir. 1995) (citing Erdmann v. Preferred Rsch., Inc. of Ga., 852 F.2d 788, 792 (4th Cir. 1988)); see also U.S. ex rel. Becker v. Westinghouse Savannah River Co., 305 F.3d 284, 290 (4th Cir. 2002) (stating that district courts are afforded "substantial discretion . . . in managing discovery").

---

competition in violation of 15 U.S.C. § 1225(a) by Teuila Hawaii, (6) fraudulent assignment by Teuila Hawaii, (7) conversion by Teuila Hawaii, (8) tortious interference with contract by Robert's Hawaii, and (9) aiding and abetting breach of fiduciary duty by Robert's Hawaii.

3

If a party declines to comply with a discovery request, the serving party "may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). An evasive or incomplete disclosure, answer, or response, "must be treated as a failure to disclose, answer or respond." Fed. R. Civ. P. 37(a)(4). District courts have "wide latitude in controlling discovery and [their] rulings will not be overturned absent a showing of clear abuse of discretion." Ardrey v. United Parcel Serv., 798 F.2d 679, 683 (4th Cir. 1986); In re MI Windows & Doors, Inc. Prod. Liab. Litig., 2013 WL 268206, at *1 (D.S.C. Jan. 24, 2013).

### III.   DISCUSSION

Hawaii Discount requests an order from the court compelling defendants to fully respond to certain discovery requests in its first set of requests for production and its interrogatories. Hawaii Discount served its first set of requests for production on October 21, 2021. Defendants requested—and Hawaii Discount agreed to—two extensions, and on January 14, 2022, defendants produced initial responses to the first requests for production. The email containing the responses stated: "We are still receiving materials from the client and will continue rolling them out as they come in over next [sic] few days." ECF No. 42-2 at 4. According to Hawaii Discount, defendants maintained a slow pace of production over the following four weeks, producing some documents but failing to produce other relevant documents in their possession. Consequently, on February 11, 2022, Hawaii Discount filed its first motion to compel. ECF No. 42. On that very same day, defendants produced their final response to Hawaii Discount's discovery requests. In fact, defendants claim that they sent their final production a mere seventeen minutes after Hawaii Discount filed the first motion to compel. On June 28, 2022, the court held

4

a hearing on Hawaii Discount's first motion to compel and defendants' motion for partial summary judgment. At the hearing, Hawaii Discount stated, for the first time, that it had intended to file an amended motion to compel containing its outstanding objections to defendants' production. On the same day, June 28, 2022, Hawaii Discount filed its second motion to compel discovery. ECF No. 59. The instant motion purports to "narrow[] the issues" down to six remaining items in dispute. Id. at 1. In light of the second motion to compel discovery, the court denied the first motion to compel as moot, resolving to evaluate Hawaii Discount's objections once the second motion was fully briefed. ECF No. 62 at 6. In the same order, the court also granted partial summary judgment in defendants' favor after concluding, based on the existing evidence on the record, that no partnership existed between Hawaii Discount and Teuila Hawaii. With that background in mind, the court turns to the individual discovery requests at issue.

### A. Request No. 1

Hawaii Discount first requests that the court compel a full and complete response from defendants to Document Request No. 1.l. of Hawaii Discount's first requests for production. Request No. 1.l. requests "all documents related to the purchase of Teuila Hawaii, LLC by Robert's Hawaii, LLC including all due diligence documents relied on by it in purchasing Teuila Hawaii." ECF No. 42-1 at 4. At the hearing, counsel for Hawaii Discount stated that he was modifying this request to account for the court's summary judgment order. In that order, the court ruled that no partnership existed between the parties and that it could readily make that determination because Hawaii Discount had failed to file a Federal Rule of Civil Procedure 56(d) affidavit seeking more time for discovery on the issue. However, in the same order, the court denied summary

judgment as to Hawaii Discount's claims related to the issue of whether it owned the Chief's Luau website, domain name, and federal service mark. As such, Hawaii Discount stated at the hearing that it is now seeking due diligence documents related to "webhosting" or similar transactions in defendants' control. The court finds that the modified request, as the court understands it, is relevant to Hawaii Discount's claims related to the website ownership issue; however, the court expresses doubt as to whether such due diligence documents exist. Indeed, at the hearing, counsel for defendants responded that no such documents exist. Nevertheless, to resolve the issue, the court orders defendants to provide an affidavit on the matter, stating the efforts defendants took to search for responsive documents and confirming that they do not exist.[3]

### B. Request No. 2

The second request in Hawaii Discount's motion to compel refers to Document Request No. 1.x., which requests "the employment file of Roy Pfund [("Pfund")] and Edward Sax." ECF No. 42-1 at 7. Hawaii Discount explains that Pfund and Sax are "key witnesses" and that "[t]heir personnel files with Robert's Hawaii will bear on their credibility." ECF No. 59 at 1. In response, defendants argue that since Pfund and Sax are not parties to this action, their personnel files have no bearing on any material issue in

---

[3] The court considers the original request, related to the production of due diligence documents reflecting the sale of Teuila Hawaii, to be moot. To the extent further clarification is needed, the court denies the motion. Since the law of the case dictates that there was no common-law partnership, Hawaii Discount would not be entitled to damages in the form of lost proceeds from the sale of Teuila Hawaii to Robert's Hawaii. Moreover, the court is satisfied with defendants' assertion that they have already produced such documents, to the extent that they exist, in the form of purchase agreements used to document the sale. The court previously reviewed those documents in camera in connection with Hawaii Discount's motion to file documents marked as confidential. ECF No. 37.

this case. Defendants further argue that the personnel files contain personal information and providing them would implicate privacy concerns. Although this discovery request may indeed raise privacy concerns, the court finds that Hawaii Discount's request should be granted, with modification.

District courts within the Fourth Circuit have concluded that public disclosure of the contents of employee personnel files invoke privacy and public policy concerns. See, e.g., Marlow v. Chesterfield Cnty. Sch. Bd., 2010 WL 3660770, at *5 n.4, *6 n.5 (E.D. Va. Sept. 15, 2010); Cason v. Builders FirstSource-Se. Grp., Inc., 159 F. Supp. 2d 242, 247–48 (W.D.N.C. 2001). When determining whether to compel disclosure of a personnel file, courts must balance "the importance of personal privacy" with "the countervailing interest in broad discovery." Hemphill v. ARAMARK Corp., 2013 WL 1662963, at *2 (D. Md. Apr. 15, 2013) (citing Kirkpatrick v. Raleigh Cnty. Bd. of Educ., 78 F.3d 579 (4th Cir. 1996) (unpublished table opinion)); see also Hickman v. Taylor, 329 U.S. 495, 507–508 (1947) (describing the need for broad discovery to provide both sides with all the information necessary for proper and full exploration of all relevant issues). As such, although not covered by a per se privilege, personnel files are normally only subject to discovery in connection with an appropriate protective order. See Cason, 159 F. Supp. 2d at 247 (ordering production of personnel files only after appropriate protective order was entered); Blount v. Wake Elec. Membership Corp., 162 F.R.D. 102, 105–06 (E.D.N.C. 1993) (same).

The confidentiality order in this case, ECF No. 34, adequately protects the privacy concerns implicated by the personnel files. Under the confidentiality order, "[d]ocuments designated CONFIDENTIAL under this Order shall not be used or disclosed . . . for any

purposes whatsoever other than preparing for and conducting the litigation in which the documents were disclosed." Id. at 2. To further ensure the protection of the employees' privacy, the court orders defendants to redact and exclude irrelevant and sensitive information. Assuming those redactions and/or exclusions are made, the court is satisfied that defendants will not require any more protection for these documents than what is already provided for in the confidentiality order. Moreover, while Hawaii Discount solely argues that the files weigh on Pfund and Sax's credibility, courts generally find that personnel files are sufficiently relevant for that reason alone. See U.S. E.E.O.C. v. McCormick & Schmick's Seafood Rests., 2012 WL 3563877, at *4 (D. Md. Aug. 12, 2012) ("Personnel files may also be discoverable if they contain information useful for impeachment."); Templeton v. Bishop of Charleston, 2021 WL 5990991, at *5–6 (D.S.C. Apr. 13, 2021) (denying a motion for a protective order where the plaintiff argued that the witness's personnel file was not confidential and was relevant to credibility, biases, and impeachability at trial). Therefore, the court grants the motion to compel defendants to produce Sax and Pfund's personnel files, subject to the redactions and/or exclusions for irrelevant and sensitive information discussed above.

### C. Request No. 3

Hawaii Discount's third request in its motion to compel refers to Discovery Request No. 1.y., which seeks "all contracts between Teuila Hawaii and any third party for webhosting, design, and/or social media account management." ECF No. 42-1 at 7. At the hearing, the parties represented to the court that the dispute over this request had been resolved. Therefore, the court considers the issue moot.

### D. Request No. 4

The request item in Hawaii Discount's motion to compel refers to Discovery Request No. 1.z. and Discovery Request No. 1.ff. Discovery Request No. 1.z. requests "all contracts between Teuila Hawaii and any third party for ticket sales." ECF No. 42-1 at 8. Discovery Request No. 1.ff. requests "all documents that refer to, pertain to, mention, or concern efforts, strategies, or plans by you to market Chief Luau's goods or services." Id. at 9. Again, the parties indicated that they had resolved their dispute over this request prior to the hearing. The court thus finds the request moot.

### E. Request No. 5

Hawaii Discount's fifth objection refers to Interrogatory No. 9. That interrogatory instructs: "State the daily total number of tickets sold and the price per ticket for each luau from July 15, 2021 through the trial of this case. This response should be supplemented monthly." ECF No. 60-1 at 5. At the hearing, counsel for Hawaii Discount stated that Hawaii Discount had agreed to amend the request so that it only seeks information from July 15, 2021 through one calendar year. Hawaii Discount further stated that it now seeks the gross sales, broken down by source, so that it can determine the amount that would have been generated by Hawaii Discount. Hawaii Discount argues that this information is relevant to its breach of contract claim, which survived defendants' motion for summary judgment. In response, defendants stated they have already agreed to provide total ticket sales and prices for one year from July 15, 2021, but they claimed that breaking down the ticket sales by source would not be possible without significant effort to do so manually. The court agrees that ordering defendants to conduct a manual sorting of the ticket sales would be disproportional to the needs of the case. As the court observed at the hearing, Hawaii Discount should possess

its own sales figures from prior to defendants' alleged breach, and it may extrapolate those numbers to calculate expected damages, to the extent it ultimately succeeds on the claim. Like for the previous request, however, the court orders defendants to confirm that such information is not able to be generated and affirm the same.

### F.  Request No. 6

Finally, Hawaii Discount moves to compel a response to Interrogatory No. 14. That interrogatory instructs: "Provide the total amount paid by you separate from your agreements with the Plaintiff, for advertising and promoting Chief's Luau, its website, and social media accounts prior to July 15, 2021." ECF No. 60-1 at 10. The parties stated that they resolved all disputes concerning this request. Therefore, the court finds it moot.

## IV.  CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion to compel responses to the discovery requests contained within Request Nos. 1, 2, and 5, in accordance with the limitations set forth in this order, and finds the remaining requests to be **MOOT**.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**August 30, 2022**
**Charleston, South Carolina**